**The court incorporates by reference in this paragraph and adopts as the findings and orders of this court the document set forth below. This document has been entered electronically in the record of the United States Bankruptcy Court for the Northern District of Ohio.**



Mary Ann Whipple
United States Bankruptcy Judge

**Dated:  March 2 2016**

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| In Re: | ) | Case No.: 14-32393 |
| | ) | |
| Jonathon Michael Taylor, | ) | Chapter 7 |
| | ) | |
| Debtor. | ) | Adv. Pro. No. 14-3130 |
| | ) | |
| All American Insurance Company, | ) | Hon. Mary Ann Whipple |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| Jonathon Michael Taylor, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**<u>MEMORANDUM OF DECISION AND ORDER
DENYING MOTION FOR SUMMARY JUDGMENT</u>**

This adversary proceeding is before the court on Plaintiff All America Insurance Company's Motion for Summary Judgment,[1] Defendant Jonathon Taylor's opposition [Doc. # 35], and Plaintiff's reply [Doc.

---

[1] Plaintiff's Motion for Summary Judgment and supporting documents were filed under seal, as permitted by the court's order entered on September 2, 2015. [Doc. # 28].

# 39].  Defendant is the Debtor in the underlying Chapter 7 bankruptcy case.  Count five of Plaintiff's complaint alleges that it is subrogated to the claims of its insured in the amount of $249,390.09, and counts one through four set forth its insured's claims as follows: trespass to chattels/conversion, negligence, trespass to real property, and civil recovery under Ohio Revised Code § 2307.60 for the criminal act of vandalism.  Plaintiff's prayer for relief, and its motion for summary judgment, seek an award of damages and, although not brought as a separate count, a determination that the debt owed to it by Defendant is nondischargeable under 11 U.S.C. § 523(a)(6).

Having considered Plaintiff's motion and the parties' briefs in support of their respective positions, for the reasons that follow, Plaintiff's motion will be denied.

## FACTUAL BACKGROUND[2]

Plaintiff's claims arise out of damages incurred when Defendant's vehicle crashed into a wall of the Sharon Dairy King ("the Dairy King") during the course of his attempted suicide.  Plaintiff offers no evidence that BJBMT, Inc. owns the Dairy King and is its insured or that it is subrogated to BJBMT, Inc.'s claims.  It relies solely on allegations in its complaint that were denied for lack of knowledge by Defendant. Nevertheless, in his opposition brief, Plaintiff states, and thus does not dispute, that the Dairy King "is owned by Plaintiff's insured, BJBMT, Inc." [Doc. # 35, p. 2].  The court thus assumes for purposes of this motion that Plaintiff is subrogated to the claims of BJBMT, Inc., that arise out of the damages to the Dairy King.

Unless otherwise indicated, the following facts are not in dispute.  Defendant had developed a plan to take his own life by causing himself to be ejected from his car at a high rate of speed.  [Def. Ex. A, p. 7]. During the early morning hours of November 12, 2012, he drove down the only dead-end street he knew of in the area at a speed of approximately 90 to 100 miles per hour with the intent to kill himself. [Pl. Ex. B, p. 36 and attached Ex. 1, p. 3].  Defendant intentionally drove his car into a guardrail and road sign at the end of the street and then hit the back wall of the Dairy King, which was situated at an undisclosed distance behind the guardrail. [*Id.*; Def. Ex. A, pp. 11, 19].  There was no sign of braking on the road or after the initial impact. [Pl. Ex. B, p. 31].  Defendant's entire vehicle penetrated the Dairy King wall, resulting in a large opening. [Pl. Ex. B, attached Ex. 1, p. 3].  Defendant was not ejected.  He was trapped in the vehicle and was extricated by fire and rescue responders and taken to St. Rita's Medical Center in Lima,

---

[2]  The court notes that both parties have cited to certain pages of depositions that are not included in the record before the court.

Ohio. [*Id.*].

Paramedic Follas, one of the first responders to the scene, testified at his deposition that Defendant was in and out of consciousness but was able to verbally answer questions at times. [Pl. Ex. A, p. 19]. When questioned, Defendant told Follas that he intended to harm himself. [*Id.*]. Follas did not ask him if he intended to drive into the Dairy King. [*Id.*].

Ronald Joseph, a certified accident reconstructionist with the Allen County Sheriff's office, spoke to Defendant after he was placed in the rescue squad and again later at the hospital, at which times Joseph testified that Defendant appeared to be coherent. [Pl. Ex. B, pp. 7, 14, 28, 35, 37]. Defendant told Joseph that he was trying to kill himself. [*Id.* at 33-34, attached Ex. 1, p. 3]. To clarify, Joseph asked if "this was an intentional act," to which Defendant responded, "yes." [*Id.*]. Joseph testified that he had no information that Defendant specifically intended to damage the Dairy King. [*Id.* at 52].

Sarah Wood, a nurse that treated Defendant at the St. Rita Medical Center emergency room, included in her emergency room notes that Defendant "states he purposely ran his car into a building going 90 mph." [Pl. Ex. C, p. 2 and attached Ex. 2, Wood Aff. ¶ 8]. Detective Tibbs, who questioned Defendant at the hospital on November 14, 2012, testified at his deposition that Defendant told him the crash was an attempted suicide and that "[h]e was intentionally hitting the Sharon Dairy King but didn't aim [the car] as such, but he just stayed that direction." [Pl. Ex. D, pp. 11, 12-13].

According to Defendant, he intended to end his life by driving into the guardrail at a high rate of speed and being ejected from his vehicle. [Def. Ex. A, p. 7; Def. Ex. B, ¶ 3-4]. Defendant testified at his deposition that he told the paramedics that he caused the crash with the intent to commit suicide but that he did not state to anyone that he intended to drive into the Dairy King building.[Def. Ex. A, p. 15, 17; Def. Ex. B, ¶ 5]. According to Defendant, he could not see the Dairy King as the accident occurred after nightfall and the building was not artificially lit, and he had no knowledge that he would drive into the building. [Def. Ex. B, ¶ 6].

Defendant was charged with, and pled guilty to, criminal vandalism, a violation of Ohio Revised Code § 2909.05(B)(1)(a) and (E). [Pl. Ex. E & Ex. F, p. 2]. His sentence included a restitution payment in the amount of $500 to "Tom Swick dba Sharon Dairy King, dba BJBMT, Inc.," which amount is apparently BJBMT, Inc.'s deductible as the court stated at sentencing that "the law does not authorize [it] to order payment to the insurance company who paid the Swicks." [Pl. Ex. F, p. 4].

# LAW AND ANALYSIS

## I. Summary Judgment Standard

Under Rule 56 of the Federal Rules of Civil Procedure, made applicable to this proceeding by Federal Rule of Bankruptcy Procedure 7056, summary judgment is proper only where there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In reviewing a motion for summary judgment, however, all inferences "must be viewed in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-88 (1986). The party moving for summary judgment always bears the initial responsibility of informing the court of the basis for its motion, "and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits if any' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the moving party has met its initial burden, the adverse party "may not rest upon the mere allegations or denials of his pleading but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine issue for trial exists if the evidence is such that a reasonable factfinder could find in favor of the nonmoving party. *Id.*

## II. 11 U.S.C. § 523(a)(6)

Section 523(a)(6) provides that a debt "for willful and malicious injury by the debtor to another entity or to the property of another entity" is not dischargeable. 11 U.S.C. § 523(a)(6). In order to be entitled to a judgment that the debt is excepted from discharge, Plaintiff must prove by a preponderance of the evidence that the injury from which the debt arises was both willful and malicious. *Markowitz v. Campbell (In re Markowitz)*, 190 F.3d 455, 463 (6th Cir. 1999); *J & A Brelage, Inc. v. Jones (In re Jones)*, 276 B.R. 797, 801-2 (Bankr. N.D. Ohio 2001).

Addressing the "willful" requirement of § 523(a)(6), the Supreme Court held that "[t]he word 'willful' in (a)(6) modifies the word 'injury,' indicating that nondischargeability takes a deliberate or intentional *injury,* not merely a deliberate or intentional *act* that leads to injury." *Kawaauhau v. Geiger*, 523 U.S. 57, 61 (1998). A willful injury thus occurs when "(I) the actor desired to cause the consequences of the act or (ii) the actor believed that the given consequences of his act were substantially certain to result from the act." *Monsanto Co. v. Trantham (In re Trantham)*, 304 B.R. 298, 307 (B.A.P. 6th Cir. 2004) (citing *Markowitz*, 190 F.3d at 464). Under § 523(a)(6), "'malicious' means in conscious disregard of one's duties or without just cause or excuse; it does not require ill-will or specific intent." *Id.* (citing *Wheeler v.*

4

*Laudani*, 783 F.2d 610, 615 (6th Cir. 1986)).

In this case, relying on deposition testimony of Joseph and Tibbs and on the Wood affidavit, Plaintiff contends that Defendant intended to drive into the Dairy King building and, thus, knew that damage to the building was substantially certain to result. However, Defendant's testimony and affidavit create a genuine dispute as to his intent at the time he drove his car down the dead end street that fateful night and as to whether his statements to Joseph, Tibbs, and Wood were misconstrued as statements that he intended to crash into the building rather than the fact that he acted with intent to commit suicide when he drove at a high rate of speed toward the guardrail and ended up hitting the building.

Alternatively, Plaintiff argues that even if Defendant is believed, the fact that he was driving at 90 miles per hour without braking and attempting to avoid the building proves that he knew his act was substantially certain to result in damage to the building. The court disagrees. According to Defendant, he did not see the building and intended only to hit the guardrail and be thrown from his car. It is not clear when Defendant lost consciousness, but he was in and out of consciousness after the crash. To the extent he lost consciousness on impact with the guardrail and street sign, he had no ability to avoid the building. To the extent he did not lose consciousness until hitting the building, it is not clear when he would have realized the car would hit the building, and it is thus unclear as to whether he would have even had time to form an intent to hit the building let alone to try to avoid hitting it.

Finally, Plaintiff relies on Defendant's criminal conviction and argues that Defendant cannot now deny that he willfully caused damages to the Dairy King. To the extent Plaintiff is asserting a collateral estoppel argument, its argument is not well taken.

In determining whether a prior state court judgment should be given preclusive effect in a federal action, the federal court must apply the law of the state in which the prior judgment was rendered. *Corzin v. Fordu (In re Fordu),* 201 F.3d 693, 703 (6th Cir. 1999). Thus, in this case, the court must apply Ohio issue preclusion principles.

As a general rule, Ohio courts "frown upon" giving preclusive effect to criminal proceedings in a subsequent civil proceeding. *Anderson v. City of Blue Ash*, 798 F.3d 338, 353 (6th Cir. 2015). In determining the preclusive effect of a criminal proceeding on a subsequent civil action, Ohio state courts consider whether "the qualitative differences between those proceedings affected the litigant's willingness or ability to pursue the claim." *Id.* (citing *State ex rel. Ferguson v. Ct. of Claims of Ohio*, 98 Ohio St. 3d 399, 404 (2003) ("[T]he qualitative differences between civil and criminal proceedings [including the differing standards of proof, rules of discovery, and rules of evidence] militate against giving criminal judgments preclusive effect in civil or quasi-civil litigation.")). Where litigants in a civil proceeding have

sought to litigate purely legal issues that were or could have been raised in an earlier criminal proceeding, courts have given preclusive effect to the criminal proceeding since the differences in the proceedings did not affect the parties' willingness or ability to pursue the issues. *See 5455 Clarkins Drive, Inc. v. Pool,* 384 Fed. Appx. 458, 465 (6th Cir. 2010) (holding that an adult cabaret's conviction for violating a zoning ordinance precluded it from raising a First Amendment challenge to that ordinance in a subsequent civil proceeding since "their willingness and ability to [raise the issue] were unaffected by the fact that the earlier proceeding happened to be a criminal trial"); *Independence Excavating, Inc. v. City of Twinsburg*, No. 20942, 2002 WL 2009464, *8, 2002 Ohio App. LEXIS 4666, *24-25 (Ohio App. Sept. 4, 2002) (holding that a conviction for violating a municipal ordinance precluded a company from later seeking a declaratory judgment that the zoning ordinance conflicted with state law since raising the issue in the criminal proceeding would not have been affected by the qualitative differences between criminal and civil proceedings). However, Ohio courts view factual determinations made in an earlier criminal proceeding differently.

In *Walden v. Ohio*, 47 Ohio St. 3d 47 (1989), the Ohio Supreme Court held that an acquittal at a criminal trial did not bar relitigation of the defendant's innocence in a subsequent wrongful imprisonment action, noting that it "has long recognized that the qualitative differences between civil and criminal proceedings. . . militate against giving criminal judgments preclusive effect in civil or quasi-civil litigation." *Id.* at 966-67. In *Phillips v. Rayburn*, 113 Ohio App. 3d 374 (1996), an assault victim filed an intentional tort action after the defendant was convicted of aggravated assault. The court held that while "the conviction could be admitted into evidence and accorded whatever weight the factfinder deems appropriate," it does not preclude the defendant "from presenting evidence rebutting or explaining the criminal conviction." *Id.* at 381-82. The court explained:

> [T]he advantages gained by preclusion do not outweigh the risks inherent in allowing a criminal conviction to bind a defendant in a subsequent civil suit based on the same conduct. Procedural and discovery differences between the criminal and civil forums coupled with the defendant's dilemma over whether to testify in his own behalf or present any defense at the criminal trial make preclusion in this instance a precarious and, we believe, unwise practice.

*Id.*; *see Breckler v. Martin*, No. 3:02CV7064, 2002 WL 1465761, *3 (N.D. Ohio June 10, 2002) (applying Ohio law in a wrongful death action and holding that the record of the defendant's criminal conviction "may be entered as evidence and accorded whatever weight the factfinder deems appropriate, but such evidence is not conclusive, and the factual issues may be re-litigated in civil proceedings."). Applying the reasoning in *Walden* and *Phillips*, this court concludes that Defendant's criminal trespass conviction does not preclude

him from presenting testimony or evidence regarding his mental state as it relates to him driving into the wall of the Dairy King.

For the foregoing reasons, the court finds that genuine issues for trial exist and that Plaintiff is not entitled to judgment as a matter of law.

**THEREFORE,** for all of the foregoing reasons, good cause appearing,

**IT IS ORDERED** that Plaintiff's Motion for Summary Judgment be, and hereby is, **DENIED.**

###